

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
08/16/2019

| | | |
|---|---|---|
| **IN RE:** | § | |
| **BLACK ELK ENERGY OFFSHORE** | § | **CASE NO: 15-34287** |
| **OPERATIONS, LLC,** *et al* | § | |
| Debtors | § | |
| | § | **CHAPTER  11** |
| | § | |
| **RICHARD  SCHMIDT** | § | |
| Plaintiff | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 19-03330** |
| | § | |
| **MERIDIAN CAPITAL FOUNDATION,** *et al* | § | |
| Defendants | § | |

## MEMORANDUM OPINION

In 2013, Meridian Capital Foundation, the RZH Foundation, the Interlink I Charitable Trust, and the Interlink III Charitable Trust (collectively "RZH") invested approximately $3,000,000.00 in Platinum Partners Black Elk Opportunities Fund, LLC and Platinum Partners Black Elk Opportunities Fund International, LLC.  (ECF No. 1 at 4).  In 2014, the Opportunities Fund repaid RZH its $3,000,000.00 principal and additional interest.  (ECF No. 30 at 12).

Richard Schmidt, Litigation Trustee, has alleged five causes of action against RZH based on the payments it received from Platinum:

i.  Fraudulent Transfers pursuant to 11 U.S.C. § 548(a)(1)(A)

ii.  Fraudulent Transfers pursuant to 11 U.S.C. § 548(a)(1)(B)

iii.  Preferential Transfers pursuant to 11 U.S.C. § 547

iv.  Violations of the Texas Uniform Fraudulent Transfer Act

v.  Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550

The Trustee's complaint alleges that a fraudulent scheme between Black Elk and Platinum affiliates resulted in approximately $98,000,000.00 of fraudulent transfers, which includes the alleged payments made to RZH.  (ECF No. 1 at 68).  The Trustee argues that because the initial transfers were avoidable, RZH is liable as a subsequent transferee.  (ECF No. 1 at 73–74).  RZH filed a motion to dismiss the Trustee's complaint, arguing that the complaint: (i) fails to establish that RZH is an insider under the Bankruptcy Code, (ii) fails to plead that RZH acted in bad faith, (iii) did not consider RZH's ability to assert new value defenses, and (iv) lacks sufficient detail to comply with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud claims.

For the reasons set forth below, to the extent that the Trustee's complaint alleges that RZH committed fraud, RZH's motion to dismiss is granted.  However, the remainder of RZH's motion to dismiss is denied.

## Background

Black Elk was an oil and gas company headquartered in Houston, Texas.  Established in 2007, its business model revolved around reworking abandoned oil and gas properties in the Gulf of Mexico.  (ECF No. 1 at 12).  Black Elk began its operations in 2007 and initially prospered.  However, as commodity prices declined in 2010, Black Elk struggled with liquidity.  (ECF No. 1 at 12–15).  To remedy this, Black Elk issued $150,000,000.00 in debt to Senior Secured Noteholders and provided those Senior Noteholders with a first priority lien to secure the debt.  The lien covered the majority of Black Elk's assets.  (ECF No. 1 at 12–15).  Despite this initial infusion of cash, Black Elk continued to struggle financially.  (ECF No. 1 at 12–15).  In 2013, Black Elk agreed to another round of equity investment with Platinum Partners in order to improve its liquidity.  This Series E equity interest was subordinate to the Senior Noteholder's

claims, which were entitled to priority on any proceeds from a sale of a Black Elk asset. (ECF No. 1 at 5).

*The RZH Charities Invest in Black Elk*

One group of investors Platinum approached regarding Black Elk's Series E equity interest was RZH, a group of charities that was established by Ralph Herzka. (ECF No. 1 at 10). RZH entered into discussions regarding this investment with Platinum's Black Elk Opportunities Fund in March 2013. (ECF No. 30 at 9). RZH initially invested $1,000,000.00 in the Opportunities Fund. (ECF No. 30 at 9). The parties expected that this initial arrangement would end on March 31, 2014, when the Opportunities Fund would repay RZH its principal. (ECF No. 30 at 9). However, before RZH's initial investment was repaid, the Opportunities Fund suggested another investment that would purportedly improve Black Elk's financial health while providing RZH with a 20.00% rate of return. (ECF No. 30 at 11). The terms of this investment required that RZH abstain from exercising its right of redemption for at least six months in exchange for obtaining a higher interest rate. (ECF No. 30 at 11). RZH agreed to increase its initial $1,000,000.00 investment with an additional $2,000,000.00 and elected to obtain the 20.00% rate of return on its investment. (ECF No. 30 at 11–12). The Opportunities Fund repaid RZH its $3,000,000.00 principal investment along with its accrued interest on August 31, 2014. (ECF No. 30 at 11).

*Black Elk's Decline*

Despite the infusion of money from investors such as RZH, Black Elk continued to struggle with liquidity and in April 2014, Black Elk sold its most valuable asset to Renaissance Offshore, LLC. (ECF No. 1 at 32). The terms of the sale agreement dictated that the Senior Noteholders receive the Renaissance sale proceeds. (ECF No. 1 at 6). Any surplus would then

be distributed to Platinum on account of its Series E investment.  However, Platinum allegedly faced "the prospect of losing more than $100,000,000.00 in the impending demise of Black Elk." (ECF No. 1 at 6).  Ultimately, Black Elk succumbed to its financial struggles on August 11, 2015, when several creditors filed an involuntary chapter 7 bankruptcy petition against Black Elk.  (ECF No. 1 at 11).  At Black Elk's request, the Court granted relief and the case was converted to chapter 11.  (ECF No. 1 at 11).

*Platinum's Plan to Recover its Investment*

The Trustee alleges that Platinum orchestrated a scheme to assume control of the Senior Secured Notes using a cover organization to hide its activities.  (ECF No. 1 at 4).  After the cover organization controlled the majority of Senior Secured Notes, it then exercised its majority position to cause the subordination of the Senior Secured Notes in favor of the Series E Equity. (ECF No. 1 at 6).  The proceeds of the Renaissance sale were then used to redeem the Series E Equity, which Platinum controlled, rather than the Senior Secured Notes.  (ECF No. 1 at 6).

The Trustee alleges that Platinum created two interrelated fraudulent schemes in which Platinum installed officers within a cover organization to conceal Platinum's involvement, and then used these friendly officers to purchase Black Elk's Senior Secured Notes.  (ECF No. 1 at 5–6).  After the purchase, these officers then controlled a sufficient number of votes to subordinate the Senior Secured Noteholders' interests in favor of Platinum's Series E Equity interest.  (ECF No. 1 at 5, 31).

Black Elk, under Platinum's control, then proposed an amendment to the Senior Secured Notes which subordinated the Senior Secured Noteholders' interest in the Renaissance sale proceeds in favor of Platinum's Series E equity investment.  (ECF No. 1 at 7–8, 32, 34).  The friendly officers then allegedly directed the cover organization to vote in favor of the

amendment, which benefitted Platinum at the expense of the Senior Noteholders.  (ECF No. 1 at

32).  Once the sale of assets to Renaissance was complete, Black Elk wired approximately

$98,000,000.00 from the proceeds, which redeemed Platinum's Series E Equity interest. (ECF

No. 1 at 4–9).

*The Trustee Seeks to Recover the RZH Transfer*

In 2017, the Trustee sued the Opportunities Fund and Platinum Partners Black Elk

Opportunities Fund International, LLC ("International") to recover the alleged transfers

described above.  (ECF No. 1 at 9).  The Opportunities Fund and International both failed to

answer the Trustee's complaint, and this Court entered a default judgment against both entities.

(ECF No. 1 at 9).  During post-judgment discovery, the Trustee learned about the alleged

payment of principal and interest Platinum made to RZH on August 31, 2014.  (ECF No. 1 at 9).

On March 1, 2019, the Trustee initiated this adversary proceeding against RZH.  (ECF No. 1).

The Trustee's complaint alleges that RHZ's receipt of $3,000,000.00 and interest from Platinum

constitutes a fraudulent transfer or avoidable preference from Black Elk, which he may recover

under the Bankruptcy Code.

On March 29, 2019, RZH filed its motion to dismiss the Trustee's complaint.  (*See* ECF

No. 30).  According to RZH, the Trustee's complaint fails to plausibly allege a right to relief and

is legally flawed.  (ECF No. 30 at 8).  The Court held a hearing on RZH's motion to dismiss on

June 17, 2018.  (*See* ECF No. 46).  At the hearing, the Trustee clarified that his claims for actual

fraud, constructive fraud, and preferential transfer were based on Platinum's actions.  (ECF No.

46 at 30).  RZH's liability under the Trustee's argument is based on its status as a *subsequent*

transferee of the initial transfer from Black Elk to Platinum under 11 U.S.C. § 550.  (ECF No. 46

at 30).  At the conclusion of the hearing, the Court preliminarily ruled that RZH's liability was

limited to its status as a subsequent transferee and took the matter under advisement.  (ECF No. 46 at 44–45).  This Opinion confirms the Court's preliminary statement.

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## Motion to Dismiss

The Court reviews motions under Rule 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).  However, the Court "will not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Fed. R. Civ. P. 8(a)(2)'s pleading requirements.  Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  In *Ashcroft v. Iqbal,* the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct."  556 U.S. 662, 679 (2009) (quoting Rule 8(a)(2)).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks removed).

Fraud claims must, in addition, meet Fed. R. Civ. P. 9(b)'s heightened pleading requirements. Under Rule 9(b), fraud claims must be alleged with particularity concerning the circumstances of the fraud. FED. R. CIV. P. 9(b); s*ee Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 195 (5th Cir. 1996) (upholding district court's dismissal of fraud claims where the plaintiff failed to allege when an allegedly fraudulent sales charge was incurred or the extent of her damages); *Red Rock v. JAFCO Ltd.*, 1996 WL 97549, at *3 (5th Cir. Feb. 16, 1996) (holding that the plaintiff's allegations did not satisfy Rule 9(b) where they failed to allege the time, place, or content of any misrepresentations). "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

A motion under Rule 12(b)(6) will be treated as one for summary judgment under Rule 56 when matters outside the pleadings are presented and not excluded by the Court. FED. R. CIV. P. 12(d); FED. R. BANKR. P. 7012(b). Under Rule 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); FED. R. BANKR. P. 7056. In the event a motion to dismiss is converted to one for summary judgment, a court must first give the parties notice and then may consider all evidence presented. *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009).

**Analysis**

*Pleading Standard for a Subsequent Transferee*

RZH's motion to dismiss focuses largely on the Trustee's failure to plead "any alleged fraud by [RZH] with particularity or detail." (ECF No. 30 at 19). The core of RZH's argument focuses on the Trustee's alleged failure to demonstrate that RZH was an insider, acted in bad faith, or committed fraudulent acts. (*See* ECF No. 30 at 19–40). However, as discussed at the June 17, 2018 hearing, it is important to distinguish between the pleading standard that the Trustee must satisfy to allege RZH's liability as a transferee, and the pleading standard to properly allege that RZH committed fraud.

Once a transfer is avoided as a preference or fraudulent transfer, a trustee may then recover from "any immediate or mediate transferee of [an] initial transferee." 11 U.S.C. § 550(a)(2). "To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transfer." *Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec., LLC)*, 548 B.R. 13, 35 (Bankr. S.D.N.Y. 2016). Whether Rule 9(b)'s heightened pleading standard applies to fraudulent transfer claims remains undecided under Fifth Circuit precedent. *Life Partners Creditors' Tr. v. Crowley (In re Life Partners Holdings, Inc.)*, 926 F.3d 103, 118 (5th Cir. 2019). However, for the avoidance of doubt, the Court will apply Rule 9(b)'s heightened pleading standard to causes of action which allege that an initial transfer is avoidable for fraud. *Guffy v. Brown (In re Brown Med. Ctr., Inc.),* 552 B.R. 165, 167 (S.D. Tex. 2016).

In this case, the Trustee alleges that the initial transfers between Black Elk and Platinum are avoidable either as a fraudulent transfer or a preference. (ECF No. 1 at 68–74). However, RZH's liability arises from its status as a subsequent transferee of this initial transfer from Black

Elk to Platinum, not as a participant in the fraud.  (ECF No. 46 at 30).  Accordingly, the Trustee's Complaint must meet Rule 9(b)'s particularity standard when alleging fraud in the initial transfer from Black Elk to Platinum.  However, RZH's involvement as a subsequent transferee need only satisfy Rule 8(a)'s "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a); *In re Bernard L. Madoff Inv. Sec., LLC,* 548 B.R. at 35.

<u>*Actual Fraudulent Transfer Under 11 U.S.C. § 548 and TUFTA*</u>

As discussed above, the Trustee's complaint must meet Rule 9(b)'s heightened pleading standard when describing the alleged fraudulent transfer from Black Elk to Platinum under 11 U.S.C. § 548(a)(1)(A), (B), and the Texas Uniform Fraudulent Transfer Act (TUFTA).

Section § 548(a)(1)(A) allows the Trustee to avoid an actual fraudulent transfer if: (i) the debtor had an interest in property; (ii) a transfer of that interest occurred within one year of the filing of the bankruptcy petition; and (iii) the transfer was incurred with actual intent to hinder, delay, or defraud present or future creditors.  11 U.S.C. § 548(a)(1)(A); *In re Life Partners Holdings, Inc.*, 926 F.3d at 117.

The Trustee has adequately pled facts regarding the alleged actual fraudulent transfer sufficient to detail the who, what, when, where, and why required under Rule 9(b)'s pleading standard.  *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).  In his complaint, the Trustee stated that Black Elk held an interest in the $3,000,000.00, which RZH received and which was a part of the overall $98,000,000.00 Platinum transferred from Black Elk.  (ECF No. 1 at 43).  Additionally, the transfers from Black Elk to Platinum occurred between August 18, and August 21, 2014, within the one-year look back period, which began after the involuntary petition was filed on August 11, 2015.  (ECF No. 1 at 40–41).  Finally, the

Trustee detailed an elaborate scheme whereby Platinum used a cover organization to gain control of the Senior Secured Notes and then subordinate the Secured Noteholder's interest in favor of Platinum's own Series E equity interest.  (ECF No. 1 at 32–33).  This is sufficient to plead the final element of § 548(a)(1)(A) that Platinum intended to defraud the Senior Secured Noteholders while benefitting its own interest in the Series E Equity.

"[T]he elements of an actual fraudulent transfer under TUFTA are: (i) a creditor; (ii) a debtor; (iii) the debtor transferred assets shortly before or after the creditor's claim arose; (iv) with actual intent to hinder, delay, or defraud any of the debtor's creditors."  *In re Life Partners Holdings, Inc.*, 926 F.3d at 117 (citing *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W. 3d 191, 204-05 (Tex. App.—Houston [1st Dist.] 2014)).

The Complaint identifies Black Elk as the debtor, and six different Platinum affiliates who were transferees of funds from Black Elk, along with the specific dates and amounts for each alleged transfer.  (ECF No. 1 at 40–41).  The Complaint states that these transfers took place shortly after the Series E Equity was redeemed at the expense of the Senior Secured Notes.  (ECF No. 1 at 33).  Additionally, the Complaint provides sufficient background to detail Platinum's alleged fraudulent scheme.  *See In re Life Partners Holdings, Inc.*, 926 F.3d at 119; *see also Hill v Oria (In re Juliet Homes, LP),* Nos. 07-36424, 09-03429, 2011 WL 6817928, at *38-39 (Bankr. S.D. Tex. Dec. 28, 2011) ("The [Trustee] identifies the transferor, recipient, amount, and date of transfers… [and provides sufficient context as to the overall scheme.").  In sum, these allegations meet Rule 9(b)'s heightened requirements to plead actual fraudulent transfer with particularity under the Bankruptcy Code and TUFTA.

*Constructive Fraudulent Transfer under 11 U.S.C. § 548 and TUFTA*

Under 11 U.S.C. § 548(a)(1)(B) a constructive fraudulent transfer is: (i) a transfer made of the Debtor's property; (ii) within two years of the petition date; (iii) in which the Debtor received less than reasonably equivalent value in exchange; and (iv) the Debtor was insolvent at the time of such transfer. *Floyd v. Option Mortg. Corp. (In re Supplement Spot, LLC),* 409 B.R. 187, 199 (Bankr. S.D. Tex. 2009). Similarly, a transfer is avoidable under TUFTA if: (i) the transfers were made without the Debtor receiving a reasonably equivalent value in exchange for the transfers; (ii) the Debtor was insolvent at the time of the transfers; (iii) a creditor exists whose claim arose before the occurrence of the transfers for whom the Trustee may act; and (iv) the cause of action arose within four years after the transfers were made. TEX. BUS. & COMM. CODE § 24.006(a); *West v. Hsu (In re Advanced Modular Power Sys.),* 413 B.R. 643, 676 (Bankr. S.D. Tex. 2009).

The Complaint states that Black Elk transferred $98,000,000.00 to Platinum after the Series E Equity was redeemed, following the sale of the Renaissance assets. (ECF No. 1 at 33, 68). As discussed previously, these alleged transfers took place within one year of the petition date. Reasonably equivalent value is exchanged when the debtor "received value that is substantially comparable to the worth of the transferred property," and is judged from the perspective of other creditors. *Stanley v. U.S. Bank Nat'l Assoc. (In re TransTexas Gas Corp.),* 597 F.3d 298, 306 (5th Cir. 2010). The Trustee's complaint alleges that the Renaissance sale stripped Black Elk of its most productive assets in order to repay the Series E Equity for its contribution without satisfying its existing debt and accounts payable. (ECF No. 1 at 64). This sufficiently pleads the element that the transfers to Platinum for its equity interest were not exchanged for reasonably equivalent value. With respect to the insolvency element, the

Complaint alleges that Black Elk could not pay its obligations as they came due.  (ECF No. 1 at 6, 32, 71).  It stated that Black Elk was aware that, even after the Renaissance sale, it would still have "hundreds of millions of dollars of debt."  (ECF No. 1 at 64).  Thus, the Trustee adequately pled his causes of action for the alleged constructive fraudulent transfers to Platinum under § 584(a)(1)(B) and TUFTA with the specificity required under Rule 9(b).

### *Subsequent Transferee under 11 U.S.C. § 550*

Having pled the fraudulent transfer causes of action against Platinum in accordance with Rule 9(b), the Trustee's Complaint alleges that once the fraudulent transfers to Platinum are avoided, RZH is liable as an initial, subsequent, or mediate transferee.  (ECF No. 1 at 70).  As discussed above, because the Complaint alleges that Platinum rather than RZH committed fraud, the Complaint need only set forth a "short and plain statement of the claim showing that the pleader is entitled to relief" regarding RZH's liability as a transferee.  FED. R. CIV. P. 8(a).

The Complaint alleges that RZH was "paid more than $3 million with funds from Platinum that had been improperly transferred from Black Elk."  (ECF No. 1 at 67).  This adequately pleads RZH's potential liability as an immediate or mediate transferee under the Rule 8 pleading standard.  The Trustee's provides factual detail to plausibly conclude on the face of the Complaint that Platinum fraudulently obtained funds from Black Elk, which were then transferred to RZH.  Accepting these allegations as true, this would impute liability on RZH as a subsequent transferee under § 550(a)(2).  As a result, RZH's motion to dismiss regarding the Trustee's failure to allege fraud by RZH is denied.

### *RZH's Insider Status*

RZH's motion to dismiss also argues that the Trustee cannot plausibly plead that it was an insider of Black Elk.  (ECF. No. 30 at 19).  The Trustee counters that he is not required to

plead RZH's insider status.  (ECF No. 36 at 32).  Rather, the complaint need only allege that *Platinum* rather than *RZH* was an insider in the initial transfer.  (ECF No. 36 at 32).  As discussed earlier, under § 550(a)(2), once a transfer is avoided, the Trustee may then recover from any immediate or mediate transfer which stems from the original transferee.  RZH's insider status is not an element that is necessary to establish its liability as a subsequent transferee of the initial transfer from Black Elk to Platinum.  *See* § 550(a)(2).

Further, to the extent that the Complaint must allege that Platinum was an insider, the Trustee has satisfied this requirement.  Under the Bankruptcy Code, an insider is defined as a director, officer, or person in control of a debtor.  11 U.S.C. § 101(31)(B).  The complaint alleges that Platinum had a majority membership and voting interest in Black Elk.  (ECF No. 1 at 6).  It states that Platinum appointed its own agents as Black Elk's Manager and Chief Financial Officer, influenced Black Elk to transact business with Platinum affiliates, and dictated Black Elk's day to day decisions.  (ECF No. 1 at 30–36).  Based on these allegations, the Trustee has adequately plead that Platinum was an insider of Black Elk and if these allegations are proven at trial in connection with claims for fraudulent or preferential transfers, may then establish RZH's liability as a subsequent transferee.

*Antecedent Debt and Good Faith*

RZH next asserts that the Complaint should be dismissed because the Trustee ignores value RZH provided Black Elk on account of an antecedent debt in good faith under 11 U.S.C. § 550(b)(1) as an investor in the Opportunities Funds.  (ECF No. 30 at 26–38).

Section 550(b)(1) provides an affirmative defense to liability for a transferee which "takes for value . . . in good faith, and without knowledge of the voidability of the transfer avoided."  RZH argues that it provided value through an antecedent debt from its initial

investment in the Opportunities Fund.  (ECF No. 30 at 37).  Additionally, RZH alleges that its investment was made in good faith and without notice of any purported fraud by Platinum.  (ECF No. 30 at 28).

Dismissal based on an affirmative defense may be appropriate under Federal Rule of Civil Procedure 12(b)(6).  *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006).  However, that defense must apply to the facts as pled on the face of the complaint.  *Id.*  In *EPCO*, a company approached a bank to obtain a letter of credit secured by collateral.  *Id.* at 467.  The company attempted to renew the letter of credit according to an agreement between the parties, but the bank refused to comply with the agreement.  *Id.* at 468.  After the company sued for breach of contract, the district court dismissed the complaint under Rule 12(b)(6) based on the statute of frauds.  *Id.* at 469.  The Fifth Circuit reversed the dismissal because the company's complaint pled enough detail to suggest "that its acceptance was in the form necessary to satisfy the [statute of frauds]."  *Id.* at 471.  Since the company's complaint did not foreclose its entitlement to legal relief, dismissal was inappropriate.  *Id.*

Similarly, the Trustee's Complaint has adequately plead that RZH was a subsequent transferee of Platinum.  As discussed earlier, the Complaint details an alleged fraudulent scheme by Platinum to obtain $98,000,000.00 from Black Elk in accordance with Rule 9(b)'s heightened pleading standard.  The Complaint then alleges that RZH received $3,000,000.00 from these fraudulently obtained funds from Platinum.  (ECF No. 1 at 43).  Thus, on the face of the Complaint, the Trustee has adequately plead RZH's liability is liable as a subsequent transferee, rendering RZH's affirmative defenses under § 550(b) premature at the motion to dismiss stage. *EPCO Carbon Dioxide Prods., Inc.*, 467 F.3d at 471.

### Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **August 16, 2019.**

_____

Marvin Isgur

UNITED STATES BANKRUPTCY JUDGE